[No. 1155-3.    Division Three.    February 14, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES KRECK, *Appellant*.

*Victor J. Felice*, for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney*, and *LeRoy C. Kinnie, Chief Deputy*, for respondent.

MUNSON, J.—Defendant appeals a conviction of second-degree murder, charged as occurring during the commission of the crime of assault in the second degree. We reverse based on a violation of defendant's Sixth Amendment right to confrontation of witnesses.

On June 14, 1971, at 5:30 a.m., the defendant, who was then living separate and apart from his wife, Jocosa Kreck, called the Spokane Police Department from her home, informing them that his wife was in need of assistance. When

the police arrived, they found him administering artificial respiration to her; she apparently was deceased at that time.

An autopsy failed to disclose the cause of death. Blood samples, drawn during the autopsy, were sent to the state toxicologist, Dr. Ted Loomis, at the University of Washington. The Prosecuting Attorney requested the samples be examined for the presence of chloroform, he having acquired information that the defendant purchased two bottles of chloroform shortly before his wife's death. The toxicologist's report disclosed a 26 milligram percentage of chloroform in the blood; the report did not state the cause of death.[1]

Dr. Loomis, called to testify about the laboratory report, stated it was made in the ordinary course of business and that he was the proper custodian of those records. He also testified the percentage of chloroform found in the blood samples constituted a lethal dose. Dr. Loomis did not conduct or participate in the laboratory analysis, nor did he

---

[1]
STATE TOXICOLOGY LABORATORY
University of Washington School of Medicine
Seattle, Washington 98105
TOXICOLOGY REPORT

Date: June 22, 1971
Sample Identification: Kreck, Jocosa (A-123-71)
Date Sample Received: June 16, 1971
Sent by: R. E. Davis, M.D.
    Deaconess Hospital, W. 800 Fifth Ave., Spokane, 99210
Sample material: Blood
(1) Test: Chloroform
    Result: 26.0 mg%
(2) Test: Ethanol
    Result: Negative
(3) Test:
    Result:
Comments:

/s/Ronald F. Skinner
for T. A. Loomis, M.D.
State Toxicologist

NOTES Please *identify* and *label* all sample material clearly. Inquiries should refer to "Sample Identification" and "Date sample Received."

formulate the laboratory report. That work was the product of Mr. Skinner, then a chemist in the State Department of Toxicology, supervised by Dr. Loomis. At the time of trial, Mr. Skinner was not an employee of the State; he was in Europe and not called as a witness. Dr. Loomis testified that Jocosa Kreck's death was caused by chloroform. This conclusion was based on the contents of the lab report. No other evidence established the cause of death.

Defendant contends a violation of his constitutional right of confrontation[2] occurred when the court allowed the State to rely solely upon the toxicologist's report to prove the cause of death, without requiring Mr. Skinner to testify as to the conduct of his examination and his conclusions. (Cf. CrR 6.13.)

The State urges that the toxicologist's report was properly admitted, its being within the business records act[3] exception to the hearsay rule in that Dr. Loomis testified he

---

[2]United States Constitution, Amendment 6:

"RIGHT TO SPEEDY TRIAL, WITNESSES, ETC. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

RCW 10.52.060:

"Every person accused of crime shall have the right to meet the witnesses produced against him face to face: *Provided,* That whenever any witness whose deposition shall have been taken pursuant to law by a magistrate, in the presence of the defendant and his counsel, shall be absent, and cannot be found when required to testify upon any trial or hearing, so much of such deposition as the court shall deem admissible and competent shall be admitted and read as evidence in such case."

[3]RCW 5.45.020:

"A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

was the custodian of this record and that such records were entered in the regular course of business of the state toxicologist. Thus, the State contends the defendant is precluded from asserting a violation of his constitutional right of confrontation. Furthermore, it is contended that the admissibility of the report was discretionary with the trial court and no abuse of discretion occurred. *McDaniel v. United States,* 343 F.2d 785 (5th Cir. 1965).

■ We need not decide whether the admission of the report was proper under the business records act; the failure of the State in not attempting to secure the attendance of Mr. Skinner at the trial, considering the nature of the experimentation he conducted, denied defendant his constitutional right of confrontation.

As stated by Professor McCormick:

> [T]he [United States] Supreme Court on more than one occasion has expressly rejected the idea that the hearsay rule and the right of confrontation are simply different ways of stating the same thing.

C. McCormick, *Laws of Evidence* § 252, at 607 (2d ed. E. Cleary 1972).[4]

The necessity for the distinction between hearsay exceptions and the confrontation clause is illustrated by the language of *Pointer v. Texas,* 380 U.S. 400, 405, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965):

---

[4]In *California v. Green,* 399 U.S. 149, 155-56, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), the court stated: "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. *See Barber* v. *Page,* 390 U.S. 719 [88 S. Ct. 1318, 20 L. Ed. 2d 255], (1968); *Pointer* v. *Texas,* 380 U.S. 400 [85 S. Ct. 1065, 13 L. Ed. 2d 923], (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied."

There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

■ At the time of trial, Mr. Skinner, an employee of a San Jose, California, corporation, was working in Germany. While the right of confrontation is not absolute, CrR 4.6(d),[5] it is a basic trial right, intended to afford the defendant the opportunity of cross-examination, and may be abridged only in light of necessity as reflected by the availability of the declarant at the time of trial. In *Barber v. Page*, 390 U.S. 719, 724-25, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968), the court in defining "availability" in a criminal prosecution, stated:

In short, a witness is not "unavailable" . . . unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly.

■ As in *Barber*, the State made no attempt to secure the attendance of Mr. Skinner at the trial, nor was any attempt made to take his deposition pursuant to CrR 4.6.[6]

---

[5]"At the trial or upon any hearing, a part or all of a deposition so far as otherwise admissible under the rules of evidence may be used if it appears: that the witness is dead; or that the witness is unavailable, unless it appears that his unavailability was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness."

[6]We believe *Mancusi v. Stubbs*, 408 U.S. 204, 33 L. Ed. 2d 293, 92 S. Ct. 2308 (1972), would have been decided differently if the 1964 amendment to 28 U.S.C. § 1783 (1958) had been in effect at the time of trial. *See also United States v. Lansky*, 496 F.2d 1063 (5th Cir. 1974).

During oral argument, the State contended that had Mr. Skinner been available the first day the case was set for trial, it would have been to no avail, since the matter was continued at the request of the defendant; and that the expense in both the transporting of Mr. Skinner from his present place of business and delay incurred by the continuance would have been a financial burden to the county. This contention is not persuasive; his testimony could have been preserved by deposition pursuant to the court rule. While *Mattox v. United States*, 156 U.S. 237, 242, 39 L. Ed. 409, 15 S. Ct. 337 (1895), is often quoted for the position that the confrontation clause is intended "to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination . . . ," the discovery rules of that era were not as refined as they are today; a deposition given pursuant to CrR 4.6 contemplates not only the defendant's presence, but cross-examination by his counsel,[7] thereby affording a defendant his right of confrontation.

We conclude that the State's failure to attempt to secure Mr. Skinner's attendance at the trial constituted a violation of defendant's Sixth Amendment guaranty. However, the question remains, was this violation prejudicial? We answer in the affirmative.

In *State v. Boehme*, 71 Wn.2d 621, 640, 430 P.2d 527 (1967), a case prior to *Barber*, but subsequent to *Pointer*, the court stated:

> Although we cannot, under the circumstances of this case, applaud or commend the state's failure to call Dr. Petty's assistant as a witness, we are not persuaded that the trial court committed reversible error in admitting Dr. Petty's testimony.

In part, the basis for the court's holding in *Boehme*, that the error, if any, was not prejudicial, was the automated nature of the experimentation conducted by the assistant of

---

[7] 1 J. Stephen, *History of the Criminal Law of England, Trial of Sir Walter Raleigh* 333-37 (1883).

Dr. Petty. *Cf. State v. Finkley,* 6 Wn. App. 278, 492 P.2d 222 (1972).

We cannot conclude from the testimony here that the nature of the experimentation conducted by Mr. Skinner was of such an automated nature, conducted by such mechanical means, that cross-examination would not have been of assistance to the trier of fact in evaluating the testing procedure.

Dr. Loomis testified to the sequential steps to be taken in such analysis, but, not having participated in the actual performance, could not state from his own personal knowledge that the necessary steps were taken in proper sequence. We are unable to attribute to the conclusion found in the lab report that it is so divorced from the possibility of human error, or free from varying interpretation, that no practical purpose would be served by affording the defendant the right to confront and cross-examine the person who actually conducted the analysis. In the absence of Mr. Skinner's presence, an essential element, *i.e.,* the cause of death, was proven in part by admission of information contained on a form report. The defendant was incapable of questioning on cross-examination either the means utilized, or the validity of, the findings entered thereon. This omission constituted prejudicial error.

In light of our decision to remand this case, we deem it necessary to address ourselves to three other contentions of the appellant. First, he contends the State failed to prove the crime of second-degree assault as defined in RCW 9.11.020(2);[8] at most the proof shows the defendant intended to commit only the crime of third-degree assault, a misdemeanor, hence he could not be guilty of felony-murder. By implication, defendant asserts, manslaughter not

---

[8]"Every person who, under circumstances not amounting to assault in the first degree—

". . .

"(2) *With intent thereby* to enable or assist himself or any other person *to commit any crime,* shall administer to, or cause to be taken by, another, chloroform, ether, laudanum or any other intoxicating narcotic or anaesthetic; . . ." (Italics ours.)

being an included crime within a charge of felony-murder, the defendant should have been acquitted.

The State takes the position it did prove an additional crime, burglary, either in the first or second degree, and that the administration of the chloroform by the defendant was in furtherance of that purpose. The trial court did not indicate which of the seven subsections of RCW 9.11.020 it found the defendant violated in finding him guilty of the crime of murder in the second degree. Thus, this court is incapable of passing upon this issue and declines to analyze the evidence. In view of the necessity for retrial, we urge the trial court to specify which section or sections of RCW 9.11.020, if any, it finds the defendant violated.

Secondly, the defendant challenges the testimony of Dr. Sol Levy as not complying with the Laws of 1973, 1st Ex. Sess., ch. 117, § 10, p. 801[9] contending Dr. Levy neither examined the defendant nor was he able to testify that the defendant "appreciated" the nature and consequences of his conduct or his criminality. Cf. *State v. Jones*, 84 Wn.2d 823, 529 P.2d 1040 (1974). We need not respond to this assignment; that portion of the statute has been repealed. Laws

---

[9]"NEW SECTION. Sec. 10. At any proceeding held pursuant to this chapter:

"(1) Experts or professional persons who have reported pursuant to this chapter may be called as witnesses. Both the prosecution and the defendant may summon any other qualified expert or professional persons to testify, but no one who has not examined the defendant outside of court shall be competent to testify to an expert opinion with respect to the mental condition or responsibility of the defendant, as distinguished from the validity of the procedure followed by, or the general scientific propositions stated by, another witness.

"(2) Experts or professional persons who have examined the defendant and who have been called as witnesses concerning his mental condition shall be permitted to make a statement as to the nature of his examination, his diagnosis of the mental condition of the defendant at the time of the commission of the offense charged and his opinion as to the extent, if any, the defendant lacked capacity either (1) to know or appreciate the nature and consequence of such conduct; or (2) to know or appreciate the criminality of such conduct. He shall be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion and may be cross-examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion."

of 1974, 1st Ex. Sess., ch. 198, § 9, p. 791. Having granted defendant a new trial, that issue is moot.

Lastly, on review, we do not find the initial investigation leading to the issuance of a search warrant was contrary to law; nor do we find the defendant's other assignments of error have merit.

Judgment reversed and remanded for new trial.

McInturff, C.J., and Green, J., concur.

Petition for rehearing denied March 20, 1975.

Review granted by Supreme Court April 28, 1975.