[No. 13400–1–I.   Division One.   August 13, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. TODD GODDARD, *Appellant.*

---

*Kim S. Wakefield* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cindy K. Smith, Deputy,* for respondent.

SCHOLFIELD, J.—Todd Goddard appeals a juvenile court conviction for second degree burglary, alleging insufficiency of the evidence and error in admitting the video tape deposition of a coparticipant.

In January 1983, Todd Goddard was riding with several other boys in a friend's car. Goddard and Chris Benson discussed a plan to steal silver from the home of a family for whom they had previously worked. While Goddard and the driver of the car waited down the street, Benson and another of the boys left the car and went to the home. Wearing a hat and bandanna to disguise himself, Benson entered the house and put some silver into his jacket. When he was discovered by one of the owners of the home, he took the silver and ran. Police intercepted the car and arrested the boys. Benson pleaded guilty to second degree burglary; Goddard was charged and found guilty of second

degree burglary as an accomplice.

Benson apparently returned to his home in California and, 3 months before Goddard's trial, was back in Washington. The deputy prosecuting attorney sought, and the court ordered, a material witness warrant for his arrest. By an order of the court, his video tape deposition was taken on February 4, 1983. At that time, Benson was on probation in California. After the deposition, he returned to California using a plane ticket purchased for him by the State.

Over Goddard's objections, the video tape deposition was admitted into evidence at his trial in May 1983. It was the only evidence presented against Goddard. Goddard was convicted and sentenced to a period of community supervision and several days' confinement.

Goddard argues that the evidence was insufficient to convict even if we treat Benson's deposition as properly admitted. The trial judge was entitled to believe Benson's deposition testimony. That testimony was sufficient to sustain a finding of guilt on a theory of accomplice liability.

We will now address the central issue of whether the admission of the video tape deposition violated the Rules of Evidence and Goddard's right to confront witnesses against him. Goddard contends that the State made no good faith effort to obtain Benson's presence at trial and therefore Benson was not "unavailable", as required under the confrontation clause of the Sixth Amendment.[1] We agree and reverse the conviction.

The trial judge reasoned that the video tape deposition was admissible because Benson had wanted to, or had been required to, return to California and the State had not "procured" his absence. This does not, however, satisfy

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense." U.S. Const. amend. 6.

either the Rules of Evidence or Goddard's right to confront witnesses against him under the Sixth Amendment.

In *Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), the United States Supreme Court set forth a 2–step test for admissibility of hearsay under the confrontation clause: (1) the prosecution must either produce, or demonstrate the unavailability of, a declarant whose statement it wishes to use against the defendant; and (2) only trustworthy hearsay, bearing adequate "indicia of reliability" may be admitted. The Court in *Roberts* stated at page 74:

> The basic litmus of Sixth Amendment unavailability is established: "[A] witness is not 'unavailable' for purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good– faith effort* to obtain his presence at trial." *Barber* v. *Page,* [390 U.S. 719, 724–25, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968)] . . .

The Court went on to state that if no possibility of procuring the witness exists, for example, because of the witness' death, good faith demands nothing of the prosecution. But if there is a possibility, "albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation. 'The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness.'" *Roberts,* at 74. The Court stated that the ultimate question is whether the witness is unavailable despite good faith efforts undertaken prior to the trial to locate and present that witness.

The State contends that it satisfied the good faith requirement by obtaining Benson's presence for the deposition. The State has misconceived the good faith requirement as set forth in *Roberts.* The good faith effort required is to obtain the presence of the witness *at trial.* The Court held in *Roberts* that the prosecutor had not breached his duty of a good faith effort when abundant testimony indicated that the parents of a witness did not know her whereabouts, that at the time of the last contact with the

witness she was outside the state, and that the prosecution had issued a subpoena to her at her parents' home several times.

In *Barber v. Page,* 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968), the United States Supreme Court held that a witness in prison in another state was not "unavailable" for purposes of the confrontation clause when the prosecutor knew where he was, a procedure existed whereby the witness could be brought to trial, and the witness was not in a position to frustrate efforts to secure his production. The Court in *Roberts* affirmed the declaration in *Barber* that "'the possibility of a refusal is not the equivalent of asking and receiving a rebuff'". *Roberts,* at 76. Thus, under *Roberts,* the prosecution is required to avail itself of whatever procedures exist to bring a witness to trial.

Here, there is no evidence that any such efforts were made by the prosecution. The record does not reveal that the State subpoenaed Benson or in any way tried to induce him to remain in this state for trial.[2] We hold it was error to admit the video tape deposition into evidence without any showing of a good faith effort by the State to obtain Benson's presence at trial.

■ Admission of the deposition also violated CrR 4.6(d)[3] and ER 804,[4] both of which predicate admissibility

---

[2]One method of obtaining Benson's presence would have been to use the procedure provided in RCW 10.55.010–.230, the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See Barber v. Page,* 390 U.S. 719, 723 n.4, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968).

[3]Former CrR 4.6(d) provided: "At the trial or upon any hearing, a part or all of a deposition so far as otherwise admissible under the rules of evidence may be used if it appears: that the witness is dead; or that the witness is unavailable, unless it appears that his unavailability was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness."

[4]ER 804(b) provides: "The following are not excluded by the hearsay rule if

of a deposition upon the inability of the party offering the deposition to obtain the attendance of the witness by process or other means. Under ER 804, before a witness can be said to be unavailable, a party offering the out–of–court statement should be required to represent to the court that it made an effort to secure the witness' attendance at trial. *See* 5A K. Tegland, Wash. Prac. § 393, at 270–72 (2d ed. 1982). The State did not demonstrate Benson was unavailable within the meaning of CrR 4.6(d) and ER 804.

Judgment reversed.

SWANSON and RINGOLD, JJ., concur.

the declarant is unavailable as a witness:

"(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

ER 804(a) defines "unavailability" as situations in which the declarant

"(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means.

"(6) A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying."