[No. 7047–2–II.   Division Two.   December 3, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL SANCHEZ, *Appellant.*

*Albert Armstrong III* and *Mozena & Armstrong,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael R. Foister, Sr., Deputy,* for respondent.

PETRICH, J.—Defendant Daniel Sanchez appeals his conviction for negligent homicide by means of a motor vehicle, RCW 46.61.520(1), after a jury trial.[1] The primary issues we are called upon to decide are (1) whether a conscious person arrested for negligent homicide must be given notice of his right to an independent blood test contemporaneously with the compulsory test administered at the direction of the arresting officer, and (2) whether the absence of

---

[1] Subsequent to Sanchez' conviction, RCW 46.61.520(1) was retitled vehicular homicide (Laws of 1983, ch. 164, § 1).

a state witness because of a planned vacation satisfies the unavailability requirement of ER 804(b)(1), so as to permit the use of a pretrial deposition of the witness at trial. Additional issues concern the propriety of various evidentiary rulings; the denial of a proposed instruction; and sufficiency of the evidence of the alternative means of committing the offense of negligent homicide, including sufficiency of the evidence of causation based on Sanchez' intoxication.

We uphold the notice of the right to an independent blood test, given at a time that would permit an evaluation of the alcoholic content of the blood so as to dispute or confirm the results of the compulsory test, even though such notice was not given contemporaneously with the administration of the compulsory test. We hold also that the evidentiary rulings were proper, that there was no error in the denial or giving of the instructions or in the evidentiary rulings; and the evidence was sufficient to support the conviction. However, we conclude that admission of the videotaped deposition violated the unavailability requirement of ER 804(b)(1). Accordingly, we reverse and remand for a new trial.

Daniel Sanchez left the Totem Pole Lounge in Vancouver on January 3, 1983, at 1:50 a.m. The roads were icy. As Sanchez was driving up a hill on Highway 99, two deputies noticed that his car was fishtailing as it accelerated and was traveling faster than was warranted by the road conditions. The car then swerved to one side, passed over the crest of the hill, and the deputies heard the sound of a crash. Sanchez' car had crossed the center line and collided with another vehicle, killing its driver, Sandra Elmer, on impact.

Deputy Backous of the Clark County Sheriff's Office ordered a blood sample to be drawn from Sanchez after he had been taken to a hospital from the scene of the accident. The test of blood drawn at 3:43 a.m. showed a concentration of alcohol in his blood of .19 percent. Deputy Backous forgot to notify Sanchez that he had a right to procure an

independent alcohol test under RCW 46.20.308(1).[2] Deputy Sheriff Treverthon later went to the jail, where Sanchez had been taken, and informed him of this right at 5:52 a.m. At a suppression hearing, the judge ruled that notice of the right to alternative testing had been given in accord with statutory requirements. The result of the blood test was admitted into evidence.

The trial was set to begin March 7, 1983, but it was continued until March 14, 1983, at Sanchez' request. Deputy Backous had planned a vacation to Mexico for the latter date so the prosecution moved to preserve her testimony by videotaped deposition to be conducted on the original trial date. The motion was granted notwithstanding Sanchez' offer to continue the trial date to a more convenient time. All prosecution witnesses whose testimony would be relevant to the deposed testimony were made available to Sanchez before the deposition. All parties were present at the deposition over which the trial judge presided, and defense counsel cross–examined Deputy Backous, who testified under oath. The trial court, over objection, admitted the videotape at trial in lieu of Deputy Backous' live testimony.

A photograph of the deceased, taken after she had been extricated from the car, was admitted over objection that it was cumulative and unduly prejudicial. Sanchez' offer of evidence of other accidents in the county that night in order to show hazardous driving conditions was rejected on the basis of lack of materiality.

The court rejected Sanchez' proposed instructions that required unanimity on at least one of the alternative means of committing negligent homicide before a guilty verdict could be returned.

Sanchez first argues that the result of the compulsory blood test should have been excluded because he was not notified by the arresting officer at the time the compulsory test was administered that he had a right to an indepen-

---

[2]The applicable provisions will be included in RCW 46.20.308(2), effective January 1, 1986.

dent blood test. Because of the delayed notice, Sanchez contends that he was denied the opportunity to procure competent evidence to rebut the results of the State's blood alcohol test.

RCW 46.20.308(1) requires that an arresting officer shall inform the arrestee that he has a right to an additional alcohol test by a qualified person of his choosing. The purpose is to protect defendant's right to proof, and it is a statutory, rather than a constitutional, right. *State v. Turpin,* 94 Wn.2d 820, 620 P.2d 990 (1980). Because of the serious nature of the negligent homicide charge, as well as the transiency of evidence of intoxication, it is crucial that defendant's right to develop evidence which may rebut that presented by the State be protected. *State v. Turpin,* 94 Wn.2d at 826. Therefore, notice of the arrestee's right to an independent test must be given at a time when he would have a reasonable opportunity to develop evidence of his state of intoxication or lack thereof at the time of the offense. Here, testimony of a toxicologist on the rate of absorption and dissipation of alcohol in the bloodstream during the interval after the earlier test established that, had Sanchez elected to procure an independent test after Treverthon notified him of this right, the results of such a test could have cast considerable doubt on the accuracy of the compulsory test if indeed it was erroneous. It is true Sanchez, through his expert, disputed the relevance of the average rate of dissipation, relied on by the State's toxicologist since it would not necessarily apply to Sanchez. However, even if we accept the outer limits of the rate of dissipation of alcohol as testified to by Sanchez' expert, his challenge does not undermine the potential value of a later test that Sanchez might have elected to procure. Assuming the compulsory test accurately showed .19 percent blood alcohol level, a later test would have been taken well within the time span when Sanchez' blood would have shown a significant alcohol concentration. The level of alcohol, or lack thereof, in Sanchez' blood at the critical time could have been determined by using the rate of dissipation most

favorable to Sanchez (or Sanchez' actual rate of dissipation if available) in extrapolating from the results of the later test. Such a test would either confirm or dispute the earlier test. Sanchez was thus afforded the protection of RCW 46.20.308(1). The trial court did not err in admitting the results of the compulsory blood test.

Sanchez next contends that the trial court violated his Sixth Amendment right to confrontation by admitting Deputy Backous' videotaped deposition. Because we find that the State failed to show unavailability of the witness as required by ER 804(b)(1) and CrR 4.6, we find it unnecessary to reach the constitutional issue.

While CrR 4.6 authorizes the court to order a deposition before trial if the court has reason to believe that a prospective witness may be unavailable at trial, its admissibility is governed by the Rules of Evidence. CR 4.6(d). Such rules require a showing of unavailability of the declarant before the declarant's deposition testimony containing statements otherwise proscribed by the hearsay rule may be admitted. ER 804(b)(1).

Although technology for preserving testimony by a videotaped deposition may present a scene similar to the live testimony before a jury, reflecting body language, demeanor and the like, such testimony is not tantamount to live testimony and when offered to prove the truth of the matters asserted and not excluded or excepted from the rule is clearly hearsay. Such is the case before us.

Before the requirement of unavailability may be established, the proponent of the hearsay statement must demonstrate his inability to procure declarant's attendance at trial by process or other reasonable means. ER 804(a)(5). When the State is the proponent, our courts consistently have required that it show a good faith effort to obtain the witness's presence at trial. In *State v. Ortego,* 22 Wn.2d 552, 157 P.2d 320, 159 A.L.R. 1232 (1945), depositions were admitted into evidence only after the State showed that it

had been unsuccessful in serving subpoenas on the witnesses after trying diligently to locate them. In *State v. Firven*, 22 Wn. App. 703, 591 P.2d 869 (1979), deposition testimony was admitted after the State showed it was unsuccessful in serving witnesses who were on a Navy ship on the high seas. Even in *State v. Hewett*, 86 Wn.2d 487, 545 P.2d 1201 (1976), where the evidence did not show whether the State had tried to subpoena the witnesses, there was a showing that the witnesses were Navy personnel and that they were on a ship on the high seas at the time of trial. Here, the State did not show that Deputy Backous was obliged to leave the jurisdiction. Further, the State did not show that it tried to subpoena her or attempt to use reasonable means to procure her attendance at trial. The court arrived at its decision that she was unavailable out of respect for her vacation plans. This does not satisfy the requirement of unavailability. Because the prosecution failed to show a good faith effort to obtain Deputy Backous' testimony at trial, the videotape deposition was improperly admitted into evidence.

An error in admission of evidence requires reversal if it materially affected the outcome of the trial. *State v. Tharp*, 96 Wn.2d 591, 637 P.2d 961 (1981); *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977). Here, Deputy Backous' testimony regarding Sanchez' arrest and the chain of custody of the blood sample made her a material witness on important factual issues. Without proper authentication of the blood sample, highly incriminating evidence against Sanchez would have been inadmissible. The error was not harmless.

Sanchez further contends that the court improperly admitted a picture of the deceased taken after she had been extricated from the automobile. Photographs are admitted within the sound discretion of the trial court. *State v. Ferguson*, 100 Wn.2d 131, 667 P.2d 68 (1983). Because the photograph of the victim showing injuries and position of

her clothing could have been relevant to the force of impact, we defer to the trial court's determination that the relevance and desirability of the photograph outweighed its prejudicial effect. Further, the court did not err in excluding Sanchez' evidence that there were other automobile accidents in the county on the night of the accident. Evidence of other accidents was not probative of Sanchez' negligence on the occasion in question.

Sanchez next asserts that there was insufficient evidence of the alternative means of committing negligent homicide to warrant an instruction that the jurors need not be unanimous on which of the means had been proven beyond a reasonable doubt. Further, he argues that the State presented insufficient evidence to establish causation of the accident by intoxication.

■■ A conviction for negligent homicide under RCW 46.61.520(1) may be predicated on findings that Sanchez caused the death of a person by driving a vehicle while intoxicated, by operation of a vehicle in a reckless manner, or by operation of a vehicle with disregard for the safety of others. The jurors are not required to be unanimous on which of the three means the prosecution has proven, provided there is substantial evidence to support each of the alternative means. *State v. Orsborn,* 28 Wn. App. 111, 626 P.2d 980 (1980), *review denied,* 97 Wn.2d 1012 (1982). In reviewing the sufficiency of the evidence, the appellate court reviews the evidence in a light most favorable to the State and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). After a review of the record, we conclude that the prosecution presented sufficient evidence to support each of the three alternative means of committing negligent homicide.

To establish reckless driving under RCW 46.61.520(1),

the prosecution must prove more than ordinary negligence. *State v. Fateley,* 18 Wn. App. 99, 566 P.2d 959 (1977). Here, witnesses testified that they observed Sanchez' car fishtailing as it accelerated up a hill on a main highway. The roads were icy, it was late at night, and Sanchez was traveling faster than the road conditions warranted. His car crossed the center line of traffic. He was still in his car when officers arrived at the scene. The nature of the injuries and the condition of the victim's car indicated that the force of impact was severe. There was, therefore, sufficient evidence to find that Sanchez was driving in a reckless manner.

The prosecution also presented substantial evidence that Sanchez was driving with disregard for the safety of others. He had tenuous control of the car as he was fishtailing, yet he accelerated on a main highway. His view of oncoming traffic was limited because he was traveling up a hill. The jury could, therefore, find that he was driving with disregard for the safety of others.

Finally, the prosecution presented substantial evidence that Sanchez was intoxicated and that it was the intoxicated state that caused the accident. The record established that Sanchez had been at the tavern for several hours immediately before the accident and had been served alcoholic beverages. He drove away from the tavern. He was observed driving erratically on the highway. Witnesses heard the crash and found Sanchez at the scene of the accident, still in his car. He had a blood alcohol level above the legal limit of intoxication. Such an unbroken sequence of events is sufficient for a jury to infer that Sanchez' state of intoxication caused the accident. *State v. Fateley, supra.* There was, therefore, substantial evidence of the three means of committing negligent homicide so that the court could instruct the jury that they need not be unanimous on which of the means the prosecution had proven.

` Reversed and remanded.[3]

REED, A.C.J., and ALEXANDER, J., concur.

Review denied by Supreme Court January 24, 1986.

[3]Sanchez also assigned error to the court's refusal to give a proposed instruction. Because the instruction was not included verbatim in Sanchez' brief, we will not consider the contention. RAP 10.4(c); *Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983).