[No. 7395-1-II.   Division Two.   August 20, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM JEWELL SWEENEY, *Appellant*.

*Todd M. Rutledge* and *Boettcher, LaLonde, Kleweno, Rutledge & Jahn,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael R. Foister, Deputy,* for respondent.

PETRICH, J.—William Sweeney appeals his conviction for indecent liberties. On appeal, we are asked to decide three issues: (1) whether testimony of a psychologist, which related to behavior patterns of children who had been sexually abused by their fathers, constituted an impermissible comment on Sweeney's guilt; (2) whether the denial of Sweeney's motion for continuance deprived him of his Sixth Amendment rights to confrontation and effective assistance of counsel; and (3) whether the deposition of a State's witness was improperly admitted because the State failed to establish that the witness was unavailable under ER 804(b)(1). We conclude that the State did not make a proper showing of unavailability of the witness under ER 804(b)(1) because it did not attempt to procure the presence of the witness by using the procedures of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Uniform Act), when it became apparent that the witness was no longer cooperating.[1] Because the deposition was important to the

---

[1]Washington's version of the uniform act is codified at RCW 10.55.

State's case in corroborating the testimony of the complaining witness, the error was not harmless. We therefore reverse the conviction.

Our reversal because of the improper use of the deposition eliminates the need to address the propriety of the admissibility of the psychologist's testimony and the denial of Sweeney's motion for a continuance. The claimed need of additional time to prepare for trial for the reasons stated does not exist on retrial and the psychologist's testimony, if relevant at all, related to the charges of statutory rape which will not be retried because of the jury's acquittal on these charges.[2]

On March 22, 1983, Jane Doe,[3] age 13, spent the night with Sharon Sweeney, age 14. Jane testified at trial that Sharon's father, William Sweeney, had touched her breast through the covers while she and Sharon were in bed. After Sweeney left the room, Jane stated that Sharon told her about past sexual experiences she had had with Sweeney. The girls left through a window, went to Jane's house, and told Jane's mother about the incident.

Sharon told investigating officers that her father had engaged in numerous sexual encounters with her over a period of many years. Sweeney was tried on three counts of statutory rape of his daughter Sharon and one count of

---

[2]We would be remiss if we failed to note our serious reservations concerning this type of evidence. The testimony, elicited in the State's case in chief, was offered to explain the child victim's delay in reporting her father's offensive behavior. The testimony related that a majority of sexually abused children do not report abuse within the family for many years because the child sees the abuse as normal behavior from the father or because of parental intimidation. Such testimony is open to the challenge that it places the defendant father in a group more likely to engage in child abuse and invites the jury to conclude that because the defendant has been identified by an expert as a member of a group that is more likely to abuse, it is more likely that the defendant committed the crime. *State v. Maule*, 35 Wn. App. 287, 667 P.2d 96 (1983). The propriety of this type of evidence is all the more questionable when offered in the State's case in chief without any obvious attempt on the part of the defendant to exploit the timeliness of the child's complaints.

[3]A fictitious name has been assigned to the victim to preserve anonymity.

indecent liberties with Jane Doe.

On May 27, 1983, the court ordered Sharon Sweeney held as a material witness. The prosecution moved for an order to perpetuate Sharon's testimony by deposition on the basis that she might not be available for trial. The court granted the motion; the deposition was taken June 6, 1983. In her deposition, Sharon stated that Sweeney had engaged in sexual intercourse and other intimate contacts with her since her sixth year in school. Further, she stated that Sweeney had had sexual contact or intercourse with her other sisters or half–sisters when they were minors. Further she stated that she observed Sweeney attempt to touch Jane's breasts while she and Jane were in bed. Finally, she stated that she then told Jane about her past experiences with Sweeney before the girls left through a window to tell Jane's mother. The prosecuting attorney, Sweeney and two defense attorneys were present at the deposition. All parties were afforded the opportunity to question Sharon.

After her deposition was taken, Sharon was released to live with her mother in California. On July 22, 1983, Sweeney's motion to take a deposition of Sharon's mother was granted after defense counsel told the court that he was afraid that neither Sharon nor her mother would appear for trial.

The State moved to admit Sharon's deposition at trial as substantive evidence. In the affidavit supporting the motion, the prosecutor stated that Sharon had been served with a subpoena before she left for California. He stated that he had contacted Sharon by telephone August 3. At that time, it appeared that she was willing to come to Washington to testify. Reservations were made for Sharon and her mother. When it appeared that there would be a resolution of the case before trial, the prosecutor called Sharon to tell her the case would not be tried. Negotiations were unsuccessful and he again called Sharon and made airplane reservations for August 8. On August 8, Sharon's mother called and told him that Sharon refused to come to Washington to testify. He again called on August 9; Sharon

said she would not appear.

At trial, Sharon's deposition was admitted over defense objection. Jane testified at trial. Sweeney testified and denied guilt on all counts. Sweeney's other daughters testified and denied that Sweeney had sexually abused them. Sweeney was found not guilty of all charges of statutory rape of his daughter and guilty of taking indecent liberties with Jane Doe. His motion for a new trial was denied.

Sweeney argues that admission of Sharon Sweeney's deposition violated his Sixth Amendment right of confrontation and ER 804(b)(1) because the State did not make a proper showing that Sharon was unavailable to testify.[4] He contends that the State should have attempted to procure Sharon's presence by using the procedures of the Uniform Act, RCW 10.55.

CrR 4.6 authorizes the court to order a deposition before trial if the court has reason to believe that a prospective witness may be unavailable at trial. The admissibility of such a deposition at trial, however, is governed by the Rules of Evidence. CrR 4.6(d). ER 804(b)(1) requires the proponent of the evidence to establish unavailability of the declarant before the declarant's deposition testimony containing statements otherwise proscribed by the hearsay rule may be admitted at trial. The State must make a good faith effort to obtain the presence of the witness at trial before the witness may be considered unavailable. *State v. Sanchez,* 42 Wn. App. 225, 230, 711 P.2d 1029 (1985).

The Uniform Act provides a mechanism for obtaining the presence of a witness from another state at a criminal trial. *State v. Goddard,* 38 Wn. App. 509, 513 n.2, 685 P.2d 674 (1984). Both Washington and California have adopted the Uniform Act. RCW 10.55.010–.130; Cal. Penal Code §§ 1334–1334.6. Other jurisdictions have required the proponent of deposition testimony to first resort to the proce-

---

[4]Because we conclude that the deposition was improperly admitted under ER 804(b)(1), we do not reach the issue of whether the admission of the deposition violated Sweeney's Sixth Amendment right to confrontation.

dures of the Uniform Act before a witness can be found to be unavailable. *State v. Kim,* 55 Hawaii 346, 519 P.2d 1241 (1974); *Morton v. State,* 684 P.2d 144 (Alaska Ct. App. 1984); *State v. Ratzlaff,* 27 Ariz. App. 174, 552 P.2d 461 (1976).

A good faith effort to obtain the presence of the witness at trial requires that the proponent use the means available to compel attendance of the witness at trial. While the State need not resort to the Uniform Act when the witness appears to be cooperative, it must use the procedures of the Uniform Act when it becomes apparent that the witness is no longer cooperating. Here, the State moved to preserve the testimony by deposition precisely because of concern that Sharon might not appear at trial if released to the custody of her mother in California. The State became aware that Sharon might not cooperate on July 22, 1983, when Sweeney moved to depose Sharon's mother because of concern that Sharon would not cooperate in testifying at trial. Although the State contended below that Sharon was willing to testify at trial until 2 days before trial was to begin, the State could even then have moved for a continuance in order to obtain Sharon's presence by means of the Uniform Act.

■ The error in admitting Sharon's deposition at trial without first establishing that she was unavailable was not harmless. An error in admission of evidence requires reversal if it materially affected the outcome of the trial. *State v. Sanchez,* 42 Wn. App. at 231. The State's case consisted of the testimony of Jane Doe and of Sharon Sweeney's deposition, along with the testimony of the psychologist. Although it is questionable to what extent the jurors found Sharon's testimony credible on the charges related to her, jurors could have believed the portion of her testimony relating to Sweeney's actions on the night of March 22, 1983. Because Sharon's testimony so closely paralleled Jane's version of the events and because the conviction rested so heavily on the testimony of the two complaining witnesses, the error was not harmless.

Reversed.

REED, A.C.J., and ALEXANDER, J., concur.