[No. 17738–9–I.   Division One.   November 23, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTONIO DON JUAN AARON, *Appellant.*

Scott J. Engelhard of Washington Appellate Defender Association, for appellant.

Norm Maleng, Prosecuting Attorney, and Saul Gamoran, Deputy, for respondent.

SWANSON, J.—Antonio Don Juan Aaron appeals from the judgment and sentence following his conviction for second degree burglary. Aaron contends the trial court erred in admitting the deposition testimony of the sole eyewitness, who was in England at the time of trial. We agree and reverse.

At about 10:20 a.m. on May 30, 1985, Tina Schwedop returned home from work to find the front door of her Seattle house wide open.[1] Schwedop, who shared the house with her parents, approached to a point from where she could look through a pantry window into the kitchen. In the kitchen she observed "a very large man, possibly Hawaiian, could be black–skinned man, very big, with tight curly hair . . ." At first, Schwedop saw only the intruder's profile, but the man then turned and looked at her. After calling out to him, Schwedop heard the intruder exit through the back door.

Schwedop telephoned her mother from a nearby convenience store; her mother then called the police. After the police arrived, Schwedop discovered that the front door had been forced open and that a VCR and several pieces of jewelry were missing. Schwedop's stepfather, Michael

---

[1]Schwedop's account was presented at trial by means of a deposition.

Trower, returned home and found the VCR wrapped in a beige shawl, in some bushes behind the house near a public stairway. Trower placed a similarly colored towel at the spot where the VCR was found.

Schwedop and Trower went across the street to a neighbor's house, where they told Pamela Buchanan and Leon Robert of the burglary. Schwedop described the burglar as a "tall dark man, possibly Hawaiian." Schwedop also informed the neighbors of the decoy towel and asked them to watch out for the suspect's return.

At approximately 1:15 p.m., Buchanan and Robert noticed a car drive up. A man got out and began looking through the brush near the staircase, while three other persons remained in the car. Buchanan called the police and reported the license number of the vehicle and the suspicious activity. Buchanan and Robert watched the man for about 5 to 7 minutes before he got back in the car and left. Robert did not get a good look at the other male in the vehicle, but described him as having short, black curly hair. Approximately one–half hour later, the police returned with the appellant in a police car. Buchanan and Robert positively identified Aaron as the man they had seen looking through the bushes. According to Robert, Aaron did not look Polynesian or Hawaiian.

At about 1:30 p.m., Officer Christopher Gough stopped the suspicious vehicle reported by Buchanan three blocks from Schwedop's house. In addition to Aaron, the vehicle contained another man, a woman, and a child. As Aaron exited the vehicle from the front passenger side, Gough noticed a blue Levi jacket on the seat. After obtaining permission of the driver, Frederick Hawthorne, to search the car, Gough found a watch and two rings in the jacket. The watch and rings were subsequently identified as having been taken in the burglary. Gough also found additional unrelated stolen items in the vehicle's trunk and arrested Hawthorne for possession of stolen property. Aaron told one of the officers that he had been seeking a spot to urinate near where the car was stopped. Schwedop was

brought to the scene and positively identified Aaron as the intruder.[2]

Aaron failed to appear for his scheduled arraignment on June 25, 1985. He was subsequently arrested and arraigned on the morning of July 5. At the arraignment, the State moved to depose Schwedop because she was scheduled to fly to England the next day. The prosecutor stated that he had been informed that Fabian Acosta had been appointed to represent Aaron and that he had made "every effort" to contact Acosta and had been advised that Acosta "was aware of the case." For purposes of the arraignment, Aaron was represented by Peter Offenbecher. After the judge granted the State's motion, Offenbecher objected on the basis of a lack of notice to Acosta.

Schwedop was deposed the same afternoon; Aaron was present and represented by Byron Ward. Ward raised no objections during the deposition, conducted no cross examination, and at the conclusion stated on the record:

> I don't have any questions, primarily because I just got this case about an hour and a half ago and have not really had a chance to talk to the defendant nor read the report, so I don't have any questions.

Prior to trial, which began on September 19, 1985, the State moved for admission of Schwedop's deposition, claiming that she was a material witness and unavailable. The prosecutor explained that Schwedop was in England for 6 months to teach art and history classes and had left Seattle the day following the deposition because she had an "unexchangeable ticket." Fabian Acosta, who was assigned the case on July 5, 1985, contested the State's claim of

---

[2]Prior to the showup, Schwedop apparently expressed some uncertainty about her ability to recognize the burglar. Officer Donald George, who spoke with Schwedop before the identification, noted in his report that "Witness doesn't believe she can identify suspect again." George subsequently explained this remark at trial:

> [Schwedop] thought about it for a few minutes to some great detail and she, basically, stated that she wasn't real sure; in other words, she possibly could and, again, she might not be able to, depending upon the length of time involved.

unavailability and also objected that he had not been notified of the deposition and that there had been no opportunity for meaningful cross examination.

The trial judge found the notice reasonable under the circumstances and ruled the deposition admissible. The judge was clearly troubled by the State's apparent lack of effort to obtain Schwedop's presence at trial, but concluded that the defense had no real need for additional cross examination since it made no effort in the 2 months after the deposition to obtain additional contact with the witness.

Aaron initially challenges the trial court's decision ordering Schwedop's deposition prior to her departure for England, contending that he failed to receive "reasonable written notice" as required by CrR 4.6(b) and that under the circumstances he had no meaningful opportunity to participate in the deposition. CrR 4.6(c). As a result, Aaron maintains, the deposition was erroneously admitted at trial. *See* CrR 4.6(c); ER 804.

■ We find it unnecessary to decide these issues since, even if the requirements of CrR 4.6 were satisfied, the State failed to make any effort to obtain Schwedop's presence at the time of trial. Schwedop was therefore not "unavailable" within the meaning of ER 804, and her deposition testimony was erroneously admitted.

Although CrR 4.6 authorizes the taking of a deposition, its admissibility at trial is determined by the rules of evidence.[3] CrR 4.6(d). ER 804(b)(1) provides in pertinent part:

**(b) Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party

---

[3]This distinction was not clearly articulated by the parties below during the lengthy discussion prior to admission of the deposition.

against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

A declarant is unavailable as a witness when, among other situations, the declarant is "absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." ER 804(a)(5).

Before a witness is "unavailable" for the purposes of ER 804, the State must make a good faith effort to obtain the witness' presence at trial. *State v. Sweeney,* 45 Wn. App. 81, 85, 723 P.2d 551 (1986). The Sixth Amendment confrontation clause may, under certain circumstances, impose additional requirements before the declarant is unavailable in the constitutional sense. *See Ohio v. Roberts,* 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980); *Barber v. Page,* 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968) (witness' imprisonment in federal prison does not constitute unavailability when state made no effort to secure cooperation of federal officials); *see generally* 5A K. Tegland, Wash. Prac., *Evidence* § 393 (2d ed. 1982) (constitutional unavailability requirement more stringent than unavailability requirement of ER 804); *see also United States v. Inadi,* 475 U.S. 387, 89 L. Ed. 2d 390, 106 S. Ct. 1121 (1986) (limiting *Roberts* discussion of unavailability to preliminary hearing testimony).

Whether the State has made a sufficient effort to satisfy the good faith requirement of ER 804 is a determination that necessarily depends on the specific circumstances of the case and rests largely within the discretion of the trial court. We agree, however, with the observation that at the very least, under ER 804, before a witness can be said to be unavailable,

a party offering the out-of-court statement should be required to represent to the court that it made an effort to secure the witness' attendance at trial.

*State v. Goddard,* 38 Wn. App. 509, 514, 685 P.2d 674 (1984) (citing 5A K. Tegland, *supra* § 393, at 271).

The record before us does not reveal *any* effort by the State to obtain Schwedop's presence at the time of trial. In fact, the prosecutor candidly acknowledged just prior to trial that no effort was made because of the cost of flying the witness back to Seattle and the nature of the case,[4] *i.e.,* second degree burglary.

We recognize, of course, the practical and economic considerations involved in obtaining and scheduling the presence of a witness who is no longer in the jurisdiction at the time of trial. Such difficulties may be exacerbated when the witness, as here, is temporarily outside the country. Although courts have considered numerous factors in determining whether the State made a sufficient effort to obtain a witness' presence under such circumstances, we have discovered no authority for the proposition that the requirement is met merely by a recitation that the witness is temporarily out of the country and that obtaining her presence is "just not something we could do" because of the cost and nature of the charge. The State's obligation is not met by obtaining the witness' presence at the deposition. *State v. Goddard, supra* at 512.

A good faith effort under ER 804 requires the proponent of the evidence to use any available means to compel the

---

[4]The prosecutor's comments to the trial judge indicate that this decision was made at the time of the deposition: "yes, I spoke with my supervisor *at the time* and, basically, it's a question of economics. This is a burglary in the second degree charge. I'm not aware of any situation on this type of charge where the State flies a witness in from London for that reason . . .

"I asked [my supervisor] do you ever bring someone back and it was clear that, yes, but not in a, you know—I guess those are really internal standards. I don't know if that's proper to put in this case—it was considered very quickly without a lot of discussion that this was not a case where we were going to go into the middle—actually, the end of August, fly someone in from England; it's just not something we could do and, after all, she was going to England for a job; this was not a pleasure trip . . .

". . . I just want to be honest. If somebody was accused of being the Green River killer, I'm sure that the office would fly that person from London. I want to be frank about it; that I'm sure that there was an economic decision in terms of when you have a witness who's not dead but simply halfway around the world, working . . ." (Italics ours.)

presence of the witness. *State v. Sweeney, supra* at 86 (State must use procedures of Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, RCW 10.55, when it becomes apparent that out of state witness no longer cooperating); *but cf. State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968) (use of RCW 10.55 not condition precedent to admission of former testimony in subsequent trial), *cert. denied,* 393 U.S. 1081 (1969). The parties and the trial judge apparently assumed that Schwedop was beyond the reach of legal process at the time of trial. However, even if this was so,[5] ER 804(a)(5) requires the State to attempt to obtain the witness' presence "by process *or other reasonable means.*" (Italics ours.)

---

[5]Neither side has considered the effect of 28 U.S.C. § 1783, the Walsh Act, enacted in 1926 to facilitate the return from Europe of two material witnesses to testify in actions arising from the Teapot Dome scandals. *See generally United States v. Thompson,* 319 F.2d 665 (2d Cir. 1963); C. Wright, *Federal Practice* § 277 (2d ed. 1982). Currently, § 1783 provides for the issuance of a subpoena by the federal courts requiring the appearance as a witness before a "body designated by it," *e.g.,* a state criminal proceeding, of "a national or resident of the United States who is in a foreign country". *See, e.g., People v. St. Germain,* 138 Cal. App. 3d 507, 187 Cal. Rptr. 915, 922 (1982) (prosecutor's failure to attempt to obtain presence of United States resident living in Curacao by means of 28 U.S.C. § 1783 constituted failure to use available court process and rendered previous testimony inadmissible); *People v. Denson,* 178 Cal. App. 3d 788, 793, 224 Cal. Rptr. 63 (1986) (under evidence provision defining witness as unavailable when court unable "to compel his or her attendance by its process", State need not exercise due diligence to obtain presence of witness who was English citizen). If the party served in accordance with the statute fails to appear, the court may, on order to show cause, find the witness in contempt and assess a fine of not more than $100,000, the fine to be satisfied from a sale of the witness' property within the United States. *See* 28 U.S.C. § 1784.

In *Mancusi v. Stubbs,* 408 U.S. 204, 33 L. Ed. 2d 293, 92 S. Ct. 2308 (1972), the Supreme Court held that a witness who had moved permanently to Sweden was unavailable for purposes of the confrontation clause. The Court's decision was based at least in part on the pre–1964 version of 28 U.S.C. § 1783, which was held not to authorize a federal court to subpoena a witness for testimony in a state felony trial. *Mancusi,* at 212. In 1964, § 1783 was revised to authorize a subpoena to bring a witness "before a person or body designated by" the district court. Thus, the current validity of the *Mancusi* analysis is uncertain. *See State v. Kreck,* 12 Wn. App. 748, 752 n.6, 532 P.2d 285 (opining that *Mancusi* would have been decided differently if the 1964 amendment to § 1783 had been in effect), *rev'd on other grounds,* 86 Wn.2d 112, 542 P.2d 782 (1975); *see also United States v. Lansky,* 496 F.2d 1063 (5th Cir. 1974).

Thus, the State may be required to show a diligent effort to obtain the voluntary presence of a witness who cannot be compelled to appear. *See United States v. Mann,* 590 F.2d 361, 367 (1st Cir. 1978); *Government of V.I. v. Aquino,* 378 F.2d 540 (3d Cir. 1967).[6]

The record here does not indicate that Schwedop was contacted while in England or whether she was even asked to return voluntarily for trial. Nor did the State attempt to show that Schwedop was financially unable to return or, if asked, would have declined to return. The prosecutor stated that Schwedop was in England for a temporary teaching position. However, no further particulars were set forth. Thus, we cannot determine whether Schwedop's return for trial might have been unreasonably disruptive to her position or otherwise impracticable. *Cf. State v. Hewett,* 86 Wn.2d 487, 545 P.2d 1201 (1976) (robbery victim, an officer on merchant ship, sailed for Japan on day after crime and was at sea on day of trial). Implicit in the good faith requirement to obtain a witness' presence at trial may also be a duty "to use reasonable means to prevent a present witness from becoming absent." *United States v. Mann, supra* at 368. Schwedop was not subpoenaed prior to her departure. *See State v. Scott,* 48 Wn. App. 561, 739 P.2d 742 (1987) (burglary victim not unavailable when he was released from subpoena after deposition and permitted to travel to Korea to visit ill wife); *State v. Firven,* 22 Wn. App. 703, 591 P.2d 869 (1979) (witnesses—navy seamen— were unavailable and their depositions properly admitted when prosecutor subpoenaed witnesses prior to their

---

[6]*Cf. State v. Kehm,* 799 F.2d 354, 360–61 (7th Cir. 1986): "[T]he question is not one of absolutes, it is one of degrees . . .

" . . .

"The favorable response [to a request to appear] need not be certain; . . . Need it be more likely than not that the response would be favorable? Is a 10% chance of a favorable outcome enough to require the prosecutor to try? Both the constitution and [Federal] Rule 804 strongly favor live testimony, and it is always easy to ask politely. Because the cost of the request is low and the benefit of a favorable response high, it is necessary to ask even when the answer is likely to be no. Nothing ventured nothing gained."

departure and witnesses were physically unavailable to testify at trial); *United States v. Rothbart,* 653 F.2d 462 (10th Cir. 1981) (prosecution facilitated witness' departure from jurisdiction by releasing him from subpoena following deposition). To a certain extent, the State's efforts must also be measured by the importance of the witness' expected testimony. It is conceded that Schwedop was the State's crucial witness; her testimony was neither cumulative nor peripheral.

A good faith requirement is premised on the existence of reasonable means to obtain the witness' presence. Thus, the State need not perform an "asinine bow to futility" in order to establish that a witness is unavailable. *People v. Gomez,* 26 Cal. App. 3d 225, 103 Cal. Rptr. 80 (1972). However, nothing in the prosecutor's remarks below suggests that an effort to obtain Schwedop's presence would have been only a futile gesture. *Cf. United States v. Kehm,* 799 F.2d 354 (7th Cir. 1986) (where nothing short of new treaty with the Bahamas would have produced witness' involuntary appearance in United States, State Department unlikely to request Bahamian government to send "a team of goons . . . to spirit [witness] out of the country in the dead of night", and witness unlikely to testify even if present, a request by prosecutor to witness to appear would have been pointless gesture).

Finally, the State indicated the failure to seek Schwedop's presence was primarily an economic decision. However, no further factual showing was made that would permit us even to consider how the expense of obtaining a witness' presence or the type of charge might affect the State's obligation to obtain the witness' presence by process or "other reasonable means." *See Government of V.I. v. Aquino, supra.*

We emphasize that the foregoing discussion is intended neither to delineate precisely how much the State was required to do in the instant case nor to exhaust the possible considerations that might affect the unavailability requirement of ER 804 when the witness is in a foreign

country. We hold only that because the State made no effort to obtain Schwedop's presence, she was not "unavailable" for purposes of ER 804 and admission of her deposition testimony was error. *See, e.g., State v. Sweeney, supra* (witness not unavailable when State made no effort to obtain presence by means of RCW 10.55); *State v. Sanchez,* 42 Wn. App. 225, 711 P.2d 1029 (1985) (witness who was vacationing in Mexico not unavailable when State failed to show witness was obliged to leave jurisdiction and State failed to subpoena witness or attempt to use reasonable means to obtain attendance at trial), *review denied,* 105 Wn.2d 1008 (1986); *State v. Goddard, supra* (witness not unavailable when State permitted witness to return to California and made no effort to obtain his presence at trial).

An error in the admission of evidence requires reversal if it materially affected the outcome of the trial. *State v. Sweeney, supra* at 86; *State v. Sanchez, supra* at 231. In *Sweeney,* an indecent liberties case, we held that admission of a deposition was reversible error because the testimony tended to corroborate the story of the other witness "and because the conviction rested so heavily on the testimony of the two complaining witnesses". *Sweeney,* at 86. In *Sanchez,* which involved vehicular homicide, we held that admission of a deposition was not harmless error when the testimony involved the chain of custody and authentication of a blood sample. In both *Sweeney* and *Sanchez,* reversible error was based solely on ER 804. In *State v. Goddard, supra,* we held that admission of a videotaped deposition violated both the evidence rules and the defendant's Sixth Amendment confrontation rights. The deposition, made by the principal participant in a burglary, was the only evidence against an accomplice.

In light of *Sweeney, Sanchez,* and *Goddard,* we are compelled to conclude that admission of the deposition here was not harmless error. Schwedop was the State's primary witness and the only eyewitness to the crime. Her identification evidence permeated the testimony of all of the other

State witnesses. Although the State presented substantial circumstantial evidence linking Aaron to the crime, we cannot conclude, given its persuasive force, that Schwedop's testimony did not affect the outcome of the trial. *Cf. State v. Scott, supra* (admission was harmless error under either the constitutional or nonconstitutional harmless error standard because there was undisputed evidence properly admitted of the same information contained in the deposition).

Judgment reversed.

PEKELIS, J., concurs.

WILLIAMS, J. (concurring)—The Sixth Amendment requires the State to make stringent efforts to procure the attendance of a prosecution witness. *Barber v. Page*, 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968). In this case there was *no* effort. I therefore concur.